FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 09, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ALEX B.,[1]

                    Plaintiff,

          v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    2:24-cv-00182-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

　　　Due to depression, anxiety, attention deficit hyperactivity disorder (ADHD), substance use disorder, post-traumatic stress disorder (PTSD), sleep issues, and right knee degenerative joint disease, status post-surgery, Plaintiff Alex B. claims that he is unable to work fulltime and applied for disability insurance benefits and supplemental security income benefits. He appeals the denial of benefits by the

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Administrative Law Judge (ALJ) on the grounds that the ALJ improperly analyzed the opinions of the consultative examiners and his treating source, erred in failing to conduct an adequate step-three analysis, erred in his consideration of Plaintiff's subjective complaints, and erred at steps four and five. As is explained below, the ALJ erred in his consideration of the medical opinions. This matter is remanded for further proceedings.

## I. Background

In January 2021, Plaintiff filed an application for benefits under Title 2 and Title 16, with both claiming disability beginning August 1, 2020, based on the physical and mental impairments noted above.[2] Plaintiff's claim was denied at the initial and reconsideration levels.[3] After the agency denied Plaintiff benefits, ALJ Stewart Stallings held a telephone hearing in August 2023, at which Plaintiff appeared with his representative and testified.[4] A vocational expert also appeared and testified.[5]

At the start of the hearing, Plaintiff expressed that he was worried about sharing his social security number.[6] Plaintiff testified that he last worked in 2020

---

[2] AR 195-216, 217-231, 249.

[3] AR 109, 121, 126.

[4] AR 39-63.

[5] *Id*.

[6] AR 41.

at DNA Past Time.[7] Plaintiff said he graduated high school and took college courses at the same time but never got a college degree or certificate.[8] Plaintiff said that he has no commercial licenses.[9] He said that he is working with DPS to find housing because his mother served him an eviction notice and he was forced to move in with his ex-wife who was abusive.[10] He said that he is 5'3" and weighs 209 pounds.[11]

Plaintiff said that he does not drink and no longer uses methamphetamine but uses .5 grams of marijuana and that his doctor wants to increase his marijuana to .8 grams.[12] Plaintiff said he was also prescribed Seroquel, tizanidine, and Vyvanse.[13] Plaintiff said his schizophrenia and ADHD have ups and downs but that his symptoms are more manageable.[14] Plaintiff said that when he tries to work he hears voices in his head and cannot hear what his coworkers are saying

---

[7] AR 44.

[8] *Id.*

[9] AR 45.

[10] *Id.*

[11] *Id.*

[12] AR 46.

[13] *Id.*

[14] AR 47.

and then he gets fired for missing things and being slow.[15] He said that he goes through stages where he can barely get out of bed and also has stages when he thinks he is being watched or followed.[16] Plaintiff said that he goes shopping once a month when he has food stamps and will panic.[17] Plaintiff testified that he still hears the voices but they do not taunt him and insult him as much with the medication and are calmer.[18] He said that it takes him longer to do things and that the medications also make him sleep up to 18 hours a day.[19]

Plaintiff said that he gets more tired on days that he leaves the house because the voices and the paranoia increase and said that he has more difficulty reading over paperwork and will spend 30 minutes reviewing what should be very something he could just sign in 2 seconds.[20] He said that his medication makes him drowsy and that at times he will have to pull over when driving so he won't fall asleep.[21] Three or four times a week he will doze off and someone will have to get

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] AR 47-48.

[19] AR 48.

[20] *Id.*

[21] AR 49.

his attention.[22] When he is under stress and the voices in his head are louder he will be irritable and second guess others because the voices make him distrusting.[23] Since 2015 he has had an issue with trusting supervisors and coworkers and that this caused disagreements with supervisors.[24] Plaintiff said that supervisors often thought he was wasting time because he was too slow and asked too many questions.[25] He said his wife also divorced him because he asked too many questions.[26]

Plaintiff said that his Vyvanse helps with concentration but otherwise he will do things 35 percent to completion and move on to something else, or he will do something and the voices will tell him he is doing it wrong and he will have to start over again.[27] He gets paranoia when people are around and he will reschedule and cancel appointments at times because he does not want to get out of bed or go anywhere.[28] Plaintiff said his son's mother is the only person he trusts to watch him and that he did not let his mother watch him because she wants custody and

---

[22] *Id.*

[23] *Id.*

[24] AR 49-50.

[25] AR 50.

[26] *Id.*

[27] AR 51.

[28] *Id.*

1    she lies.[29] He said that he does not trust his ex or anyone else to watch his son but

2    that he is trying to co-parent with his ex because the court ordered it, although  he

3    appealed the parenting  plan because it is stressful to wonder where his ex  is and

4    what she is doing when she has his son.[30] He said that he was upset after a surgery

5    because his mother and his ex were caring for his son.[31]

6        Plaintiff said that he had surgery on his right knee in 2021 but he still needs

7    to elevate his leg, and that if he walks or sits without elevating it for more than 10

8    minutes it will throb and pulse and cause the three middle toes of his right foot to

9    go numb.[32] He said that three to five times a day he will elevate his leg from 20

10   minutes to one hour.[33] He states that he re-injured the knee after surgery and had

11   spoken with an orthopedic doctor.[34] Plaintiff expressed that he wanted to explain

12   why the orthopedist said he was in pain but the ALJ did not acknowledge that

13   statement and  asked for the VE to be called to testify.[35]

---

[29] AR 51-52.

[30] AR 53-54.

[31] AR 54.

[32] AR 52.

[33] AR 53.

[34] *Id.*

[35] *Id.*

DISPOSITIVE ORDER - 6

1    After the hearing, the ALJ issued a decision denying benefits.[36] The ALJ
2  found Plaintiff's alleged symptoms were not entirely consistent with the medical
3  evidence and the other evidence.[37] As to medical opinions, the ALJ found:

4    - The opinions of state agency evaluator Michael Brown, PhD, to be
5      somewhat unpersuasive.

6    - The opinion of state agency evaluator Timothy Bessent, MD, that
7      Plaintiff has no severe physical impairment to be "not consistent with
8      the evidence."

9    - The April 2022 opinion of consultative examiner Thomas Genthe,
10      PhD, that Plaintiff's psychotic and depression symptoms are not
11      controlled and would likely interfere with his ability to initiate or
12      maintain employment to be neither valuable nor persuasive.

13    - The remaining April 2022 opinions of consultative examiner Thomas
14      Genthe, PhD, to be partially persuasive.

15    - The May 2023 opinions of consultative examiner Thomas Genthe,
16      PhD, to be not persuasive.

17    - The opinions of consultative examiner Thomas Crisp, DO, to be
18      generally persuasive.

19

20 _____

[36] AR 15-38 . Per 20 C.F.R. §§ 404.1520(a)-)g), 416.920(a)–(g), a five-step
21
evaluation determines whether a claimant is disabled.
22
[37] AR 24-29.
23

- The April 2023 opinions of Marnie Boyer, PA-C, to be unpersuasive.

- The July 2023 opinions of Marnie Boyer, PA-C, to be unpersuasive.[38]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024.

- Plaintiff had not engaged in substantial gainful activity since August 1, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: polysubstance abuse; schizoaffective disorder; PTSD; ADHD; obesity; and right knee degenerative joint disease, status post-surgery.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments with consideration of Listing 1.18, 12.03, 12.11, and 12.15.

- RFC: Plaintiff had the RFC to perform light work with the following exceptions:

  [H]e would need a sit/stand option to alternate sitting/standing every 30 minutes for about five minutes while remaining at the workstation. No climbing ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. He can occasionally climb ramps and stairs. No moving, dangerous machinery or unprotected heights. No production-pace or conveyor belt work

---

[38] AR 30-32.

(nonworker-controlled pace). Work should be in a predictable work environment. No more than brief, superficial public contact and interaction with coworkers, and occasional interaction with supervisor.

- Step four: Plaintiff is capable of performing past relevant work as a salesclerk as he performed it.

- Step five: as an alternative finding, considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a routing clerk (DOT 222.687-022); a laundry aid (DOT 302.685-010), and a collator operator (DOT 208.685-010).[39]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[40]

## II. Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[41] and such error impacted the nondisability determination.[42] Substantial evidence is "more than a mere scintilla but less than a

---

[39] AR 20-34.

[40] AR 191.

[41] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[42] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

1  preponderance; it is such relevant evidence as a reasonable mind might accept as

2  adequate to support a conclusion."[43]

### III.    Analysis

4        Plaintiff seeks relief from the denial of disability on four grounds. He argues

5  the ALJ erred when evaluating the medical opinions, that the ALJ erred in his

6  analysis at step three, that the ALJ erred in his assessment of Plaintiff's

7  testimony, and that as a result of those errors the ALJ erred in relying on VE

8  testimony at steps four and five.  As is explained below, the Court concludes that

9  the ALJ consequentially erred in his evaluation of the medical opinion evidence.

**A.    Medical Opinion: Plaintiff establishes consequential error**

11       Plaintiff argues the ALJ erred in his evaluation of the medical opinions of

12  Dr. Genthe regarding Plaintiff's mental impairments and his evaluation of the

---

ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

nondisability determination").

[43] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

court "must consider the entire record as a whole, weighing both the evidence that

supports and the evidence that detracts from the Commissioner's conclusion," not

simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

not indicate that such evidence was not considered[.]").

opinions of PA Boyer regarding Plaintiff's physical impairments.[44]  Plaintiff argues that the ALJ erred in finding Dr. Genthe's opinions inconsistent with the record because he failed to consider the waxing and waning nature of Plaintiff's schizoaffective disorder.[45] Plaintiff also argues that the reasons that the ALJ gave to discredit the opinions of PA Boyer were erroneous.[46] Specifically, Plaintiff argues that the ALJ erred in attributing a statement to him that his orthopedist said he did not need a second surgery and erred in discrediting PA Boyer's opinion because he had not been prescribed a cane.  The Commissioner counter-argued that the ALJ properly considered that Dr. Genthe's opined limitations were inconsistent with Plaintiff's activities of daily living and considered that his April 2022 opinions were different than his May 2023 opinions.[47] The Commissioner also counter-argues that the ALJ properly reasoned that PA Boyer's opinions were inconsistent with Plaintiff's ability to manage his household and that the ALJ did not err in

---

[44] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[45] ECF No. 9.

[46] *Id.*

[47] ECF No. 10.

reasoning that if Plaintiff were limited to sedentary work by his knee injury he would have been prescribed a cane.[48]

1.  Standard

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[49] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[50] Supportability and consistency are the most important factors,[51] and the ALJ must explain how he considered the supportability and consistency factors when reviewing the medical opinions and support his explanation with substantial evidence.[52] The ALJ may consider, but is not required to discuss the following additional factors: the source's relationship to Plaintiff such as length of the treatment, the purpose of the treatment relationship,

---

[48] *Id.*

[49] 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b).

[50] 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)–(5).

[51] *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).

[52] *Id.* §§ 404.1520c(b)(2);  416.920c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

1  and whether the source examined Plaintiff, as well as whether the source had

2  advanced training or experience to specialize in the area of medicine in which the

3  opinion was being given.[53] When considering the ALJ's findings, the Court is

4  constrained to the reasons and supporting explanation offered by the ALJ.[54]

5      2.   <u>Relevant Medical Evidence</u>

6      Because Plaintiff argues that the ALJ failed to properly assess medical

7  opinion evidence regarding Plaintiff's schizoaffective disorder and ACL injury, the

8  Court will only address the relevant evidence.

9      a.   <u>*Medical records*</u>

10      On September 4, 2020, Plaintiff presented to Marnie Boyer, PA, of East

11  Adams Rural Healthcare to establish care and reported that he was diagnosed with

12  schizophrenia and bipolar disorder and needed a PCP to be able to be referred for

13  psychiatric care.[55] Plaintiff reported that he had been diagnosed on August 4, 2020,

14  and was taking aripiprazole but did not think it was effective.[56]Plaintiff reported

15  that he had trouble sleeping and concentrating, was irritable, had auditory

16  hallucinations of voices that insulted him, that he had lost jobs because he was

17  

18  [53] Id.

19  [54] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court

20  review is constrained to the reasons the ALJ gave).

21  [55] AR 433.

22  [56] *Id.*

23  

DISPOSITIVE ORDER - 13

slow, and that he had quick and irrational anger at times.[57] On examination, Plaintiff was positive for anxiety, depression, and PTSD, and was anxious with hallucinations present.[58] PA Boyer diagnosed schizoaffective disorder, bipolar type, and changed medication to stop Aripiprazole and start Seroquel.[59] On September 22, 2020, Plaintiff presented to PA Boyer for follow-up and reported that he no longer heard voices but was sleeping 18 hours and unable to concentrate.[60] PA Boyer decreased Plaintiff's Seroquel and added Vyvanse.[61] On October 27, 2020, Plaintiff presented to PA Boyer and reported that a week after reducing his dosage of Seroquel he began hearing voices and having paranoid thoughts.[62] PA Boyer increased Plaintiff's Seroquel to twice daily.[63]

On January 28, 2021, Plaintiff returned to PA Boyer seeking treatment, and reported that he had stopped taking Vyvanse in October and Seroquel in November 2021 and was now paranoid, anxious, and hearing voices that told him someone

---

[57] *Id.*

[58] AR 434-436.

[59] AR 436.

[60] AR 439.

[61] AR 441.

[62] AR 443.

[63] AR 445.

was after him.[64] Plaintiff reported that he had burned his journals and his computer and had not been able to keep a job, but had recently had a child and was enjoying fatherhood.[65] PA Boyer restarted Vyvanse and Seroquel and referred Plaintiff to psychiatry.[66] On May 21, 2021, Plaintiff returned seeking a refill of Vyvanse after running out and finding it difficult to concentrate and stay on task.[67] Plaintiff denied hallucinations but reported that he did not complete tasks and only did them half way.[68]

On June 15, 2021, Plaintiff presented to PA Boyer reporting right knee and thigh pain with a pain level of 7 for the last 6 months.[69] He said the pain was burning, dull, sharp, and throbbing and was aggravated by bending, climbing stairs, sitting, walking, and standing and was associated with crepitus, locking, weakness, swelling, and numbness.[70] PA Boyer noted that she suspected internal derangement of the knee and would seek authorization for an MRI.[71]

---

[64] AR 447.

[65] *Id.*

[66] AR 449.

[67] AR 455.

[68] *Id.*

[69] AR 460.

[70] *Id.*

[71] AR 463.

On June 18, 2021, Plaintiff presented to PA Boyer and was tachycardic and lightheaded.[72] Plaintiff was taken to the emergency department of East Adams Rural Hospital where he reported syncope episodes for the last four months in addition to the recent syncope episode that day.[73] Plaintiff reported lightheadedness and visual blackout which lasted for a second and then resolved.[74] He reported mixing spice, upper, and downers in the past but denied any use of illicit drugs in the last four months.[75] Plaintiff reported anxiety, depression, alcohol abuse, delusions, difficulty concentrating, hallucinations, mood changes, and substance use.[76] An EKG revealed borderline right bundle branch block, but Plaintiff was asymptomatic and was referred to cardiology.[77]

On June 25, 2021, Plaintiff presented to East Adams Rural Healthcare for an MRI of the right knee, due to chronic right knee pain that resulted in multiple falls.[78] The MRI revealed: 1. Chronically torn and distally retracted ACL, appearing fibrosed and scarred within the anterior Intercondylar notch which may

---

[72] AR 465.

[73] AR 342-345.

[74] AR 342.

[75] *Id.*

[76] *Id.*

[77] AR 343.

[78] AR 357.

functionally act as a cyclops lesion, measuring 1.9 x 1.3 x 1.3 cm. Positive MR drawer sign is present. 2. Radial tear of the free edge of the posterior horn of the lateral meniscus which may have a tiny parrot-beak component. 3. Vertically oriented intermediate T2 weighted signal within the periphery of the posterior horn of the medial meniscus, which has the appearance of scar from healed tear. 4. Small focus of grade 2 chondral thinning along the posterior weight-bearing medial femoral condyle with subchondral marrow edema. 5. Deformity of the non-weightbearing lateral femoral condyle, likely sequela of old trauma although conceivably a small exostosis could have a similar appearance 6. Chronically scarred and thickened MCL, fibular collateral ligament and popliteus tendon.[79] At an appointment on July 12, 2021, Plaintiff reported to PA Boyer that the knee felt like it would give out.[80]

On August 17, 2021, Plaintiff presented to PA Boyer for medication review.[81] He reported that at the end of the day his Vyvanse wore off and asked for an increased in his dosage.[82] At a follow-up appointment on September 21, 2021,

---

[79] AR 358.

[80] AR 471.

[81] AR 477.

[82] *Id.*

Plaintiff reported that he could complete his daily activities at a dosage of 40 mg of Vyvanse.[83]

On October 11, 2021, Plaintiff was examined by Brannon Orton, MD, of Moses Lake Orthopedics and assessed with rupture of the anterior cruciate ligament of the right knee, complex tear of the medial meniscus of the right knee, tear of the lateral cartilage of the right knee.[84] Plaintiff was scheduled for ACL reconstruction with medial meniscus and lateral meniscus debridement surgery to take place October 13, 2021.[85] Following surgery, Plaintiff was prescribed 6 weeks of physical therapy.[86] On October 14, 2021, Plaintiff presented to PA Boyer for bandage change following arthroscopic surgery.[87]

On October 19, 2021, Plaintiff presented to PA Boyer for medication review and reported that he was doing well on a 50 mg dosage of Vyvanse. was able to concentrate, and was happy.[88] Plaintiff reported continued pain in his knee post-surgery but reported he was compliant with post-op instructions.[89]

---

[83] AR 483.

[84] AR 381.

[85] *Id.*

[86] AR 383.

[87] AR 488.

[88] AR 493.

[89] *Id.*

On November 4, 2021, Plaintiff completed a new patient intake form for East Adams Rural Healthcare.[90] Plaintiff reported that he was 5'4' and weighed 215 pounds; that he was diagnosed with schizophrenia, depression, PTSD, ADHD, and bipolar disorder; that he was seeking care for ACL reconstructive surgery and lateral and medial meniscus repair; that the onset of the injury was October 13, 2021; and that he lived in a house with family and used no cane or assistance device.[91] On the same day, Plaintiff began physical therapy, on the referral of his surgeon Brannon Orton, MD, following ACL reconstruction with meniscus repair of the right knee.[92]

On November 16, 2021, Plaintiff presented to PA Boyer for medication management and reported that on his present dosage of Vyvanse and Seroquel he was able to sleep and get tasks done in a timely manner and was pleased with how things were going.[93] At a January 13, 2022 follow-up appointment, Plaintiff reported again that he was stable and able to complete tasks.[94] On March 8, 2022, Plaintiff presented to PA Boyer, reporting that he was doing well on Vyvanse and

---

[90] AR 375.

[91] Id. 383.

[92] AR 379.

[93] AR 499.

[94] AR 504.

Seroquel and was not hearing voices, had a stable mood, and had no difficulty

staying organized and running his household.[95]

On April 14, 2022, Plaintiff was examined by Thomas Genthe, PhD, at the

request of the Commissioner.[96] Plaintiff stated that this impairments were

paranoia, delusions, hallucinations, schizoaffective disorder, anxiety, depression,

and PTSD.[97] He reported that he rented a house, was divorced but dating, had a

driver's license and car, was able to take his son to the park and talk to his own

father, but had no friends and did not participate in church or any group, and

thought he had no significant difficulty getting along with others.[98] He reported

that he had been taking Seroquel and Vyvanse for a year and that "the voices are

dimmed and I get less anxious."[99]  Plaintiff said he graduated high school and

attended a few semesters of college, and that he last worked in 2020 for one month

as a cook but left after he had an issue with his boss, and that he has not been

employed since because he gets paranoid when he leaves home.[100] Plaintiff

reported using .2 grams of marijuana a day and stated that his daily routine was to

---

[95] AR 510.

[96] AR 324-330.

[97] AR 324.

[98] AR 324-325.

[99] AR 325.

[100] *Id.*

watch TV with his son, cook, take his partner to work, clean, and do dishes and that he was able to care for his hygiene, cook, clean, and prepare meals.[101] He reported that he could manage his medications, schedule appointments, and shop when needed.[102]

Plaintiff stated that he had symptoms of depression including emptiness, loneliness, tearfulness, insomnia, fatigue, low self-esteem, some isolation, and irritability. He reported symptoms of ADHD including failing to pay attention, being easily distracted, being bored, being disorganized, procrastinating, and losing things.[103]Plaintiff reported symptoms of psychosis including constant abusive auditory hallucinations when unmedicated that are present but quieter with medication, and delusions of persecution.[104] He said that his psychosis is triggered by stress.[105] On examination, he was restless, had good eye contact, had normal mood and broad affect, had no psychotic thinking, had tangential speech, was able to recall zero of four objects after 5 minutes, had good long-term memory, had limited fund of knowledge, was able to do simple math and could spell "world" backward and forward, had significant difficulty following the conversation, and

---

[101] AR 326.

[102] *Id.*

[103] *Id.*

[104] AR 327.

[105] *Id.*

1    had abnormal abstract reasoning.[106]  Plaintiff had fair judgment and insight.[107] Dr.

2    Genthe diagnosed Plaintiff with attention-deficit/hyperactivity disorder, combined

3    presentation; and schizoaffective disorder, depressive type.[108]

4            On April 30, 2022, Plaintiff was examined by Thomas Crisp, DO, at the

5    request of the Commissioner.[109] Plaintiff reported that his mental health was the

6    main issue and that he had surgery to reconstruct his ACL but was recovering.[110]

7    Plaintiff reported that he was interested in returning to college, and was able to

8    perform grooming; could perform basic household chores such as cooking, cleaning,

9    and laundry; and was able to drive a car and go shopping.[111] On examination,

10   Plaintiff had normal speech, memory, concentration, affect, and behavior.[112] Motor

11   strength in Plaintiff's right knee was 4/5 and was 5/5 in all other regions, reflexes

12   were +2 in the knees, eliciting deep tendon reflexes in the right knee caused

13   considerable pain, and reflexes were 1+ in the Achilles and biceps bilaterally.[113]

14

---

15

16   [106] AR 327-328.

17   [107] AR 328-329.

18   [108] AR 329.

19   [109] AR 331-340.

20   [110] AR 331.

21   [111] *Id.*

22   [112] AR 332.

23   [113] AR 332-333.

1   Plaintiff had no difficulty getting on and off the examination table, had no

2   difficulty tandem walking, was able to walk on heels with difficulty, was unable to

3   walk on toes, had no difficulty touching his finger to his nose, and had a normal

4   gait without use of an assistive device.[114] Straight leg raising was negative

5   bilaterally and Plaintiff had normal range of motion in the spine, shoulders,

6   elbows, wrists, hands, hips, knees, ankles, and great toes.[115] Dr. Crisp diagnosed

7   Plaintiff with right knee injury status post ACL repair 2021 and unknown

8   psychological impairment.[116]

9          On May 19, 2022, Plaintiff presented for follow-up to PA Boyer and reported

10  that he was stable on his medication.[117] Plaintiff also stated that his right knee

11  was occasionally sore and swollen but only when he had been especially active.[118]

12         On August 16, 2022, Plaintiff presented to PA Boyer with disability

13  paperwork and complaints that his schizoaffective disorder was much worse with

14  anxiety and auditory hallucinations after he split up with his son's mother but

15  stated that he did not want to increase his Seroquel.[119] Plaintiff also reported that

16  _____

17  [114] AR 333.

18  [115] AR 333-335.

19  [116] AR 335.

20  [117] AR 515.

21  [118] *Id.*

22  [119] AR 520.

23

DISPOSITIVE ORDER - 23

he could stand for 30-45 minutes and walk for about 20 minutes without rest, but that as his son's caretaker he was not able to rest often.[120] On September 6, 2022, Plaintiff presented for follow-up and was noted to have hallucinations of reading people's minds for the last 2 months during the stress of a custody battle.[121] On September 20, 2022, Plaintiff was examined by PA Boyer and was assessed with pain in his right knee with referral to physical therapy and ADHD, predominantly hyperactive.[122] On October 4, 2022, Plaintiff presented to PA Boyer for medication review and reported that his Vyvanse and Seroquel were working well and that he was able to concentrate and was rarely hearing voices.[123] On October 6, 2022, Plaintiff presented to East Adams with complaints of right knee pain after walking for sitting for 20 minutes.[124]  At a November 1, 2022, appointment, Plaintiff reported that he was doing well on Vyvanse and getting tasks done but was having continued pain in his right knee.[125]

---

[120] *Id.*

[121] AR 530.

[122] AR 384.

[123] AR 539.

[124] AR 376.

[125] AR 544.

On December 1, 2022, Plaintiff presented to PA Boyer for medication management.[126] He reported that he was doing well on Vyvanse, was able to stay focused and continue as his son's primary caretaker, and had played in the snow with his son.[127] Plaintiff was positive for joint swelling and reported continued pain in his right knee, which PA Boyer stated she would request authorization for an MRI to view.[128] On examination, PA Boyer noted tenderness present over the LCL and patellar tendon.[129] Plaintiff's prescriptions for Vyvanse and Seroquel were refilled.[130] PA Boyer diagnosed anxiety; ADHD, combined type; pain in the lateral portion of the right knee; and schizoaffective disorder, unspecified type.[131] On January 5, 2023, Plaintiff presented to PA Boyer for follow-up.[132] He reported numbness and tingling in his upper right thigh, pain with light touch, and swelling and throbbing when he stands for more than 20 minutes.[133] He reported that his Vyvanse was not working as well but deferred adjusting the dosage and stated that

---

[126] AR 385.

[127] *Id.*

[128] *Id.*

[129] AR 386.

[130] AR 387.

[131] AR 388.

[132] AR 392.

[133] *Id.*

he was otherwise happy.[134]  On examination there was tenderness over the medial joint line, lateral joint line, and ACL but anterior and posterior drawer tests were negative.[135]

On February 10, 2023, Plaintiff presented to PA Boyer to review the results of MRI of his right knee.[136] On examination, Plaintiff was positive for joint swelling, light-headedness, and auditory hallucinations.[137] Plaintiff had effusion in the right knee, tenderness over the ACL and ACL laxity was present.[138] Based on the MRI results and examination, PA Boyer diagnosed a tear of the anterior cruciate ligament graft.[139]

On April 7, 2023, Plaintiff returned with complaints that two days prior he picked something up and heard a pop in his right knee.[140] He stated that he had pain in the lateral side of his knee radiating into his thigh that had increased from a pain level of 4-5 to a pain level of 8-9 and that increased with walking.[141] Plaintiff

---

[134] *Id.*

[135] AR 393.

[136] AR 399.

[137] *Id.*

[138] *Id.*

[139] AR 400.

[140] AR 408.

[141] *Id.*

said he had to limit his walking to short periods and that the pain was not alleviated by Tylenol or Motrin.[142] On examination, Plaintiff had decreased range of motion, tenderness over the lateral joint line and LCL, LCL laxity, and positive McMurray test.[143] PA Boyer noted that she suspected LCL injury and prescribed an MRI and hydrocodone for pain.[144] On April 25, 2023, Plaintiff returned to PA Boyer for follow-up and reported worsening pain in his knee, with trouble sitting longer than 10-15 minutes or standing longer than 5-10 minutes but an ability to walk longer when shopping if leaning on a cart.[145] On examination, Plaintiff had swelling in the joint, decreased range of motion, tenderness over the lateral joint line and LCL, and LCL laxity.[146] Based on the MRI and examination, PA Boyer diagnosed tear of the anterior cruciate ligament graft and referred Plaintiff to orthopedic surgery.[147]

On May 1, 2023, Plaintiff presented to Dr. Genthe for a second consultative evaluation.[148] Plaintiff reported that he was divorced and single and had no home

---

[142] *Id.*

[143] *Id.*

[144] AR 408-409.

[145] AR 411.

[146] AR 411-412.

[147] AR 412.

[148] AR 553-557.

but was staying with family.[149] Plaintiff denied difficulty getting along with others and denied legal problems.[150] Plaintiff reported that he had been taking Seroquel and Vyvanse since January 2021 and that he had last worked for a month in August 2020 before leaving because he was too stressed.[151] Plaintiff reported that he took care of his son and worked inside and around the house, was able to care for his hygiene, was able to do household chores, was able to manage his medications, was able to schedule appointments, was able to shop, and was interested in researching.[152] Dr. Genthe diagnosed PTSD; ADHD, combined presentation; schizoaffective disorder, depressed type; and rule-out personality disorder.[153]

On May 9, 2023, Plaintiff presented to PA Boyer, reporting that his pain continued but that hydrocodone allowed him to be functional at home, and that he had an appointment scheduled with his orthopedist.[154] Plaintiff also reported that a psychologist who examined him for DSHS diagnosed him with PTSD.[155] On

---

[149] AR 553.

[150] *Id.*

[151] AR 554.

[152] AR 554-555.

[153] AR 556.

[154] AR 414.

[155] *Id.*

examination, Plaintiff was nervous and anxious but had normal mood and affect, and he had decreased range of motion of the right knee, ALC laxity and a positive drawer test.[156] On June 12, 2023, Plaintiff presented to PA Boyer for pain management and reported no change in his knee pain.[157] He reported a constant aching pain that becomes sharp when he walks, and that radiates to his thigh when he sits for longer than 20 minutes.[158] Plaintiff reported that hydrocodone allowed him to be functional in and around home.[159] On examination, Plaintiff had gait problems and joint swelling, tenderness over the LCL and ACL, and positive drawer test.[160]

On June 26, 2023, Plaintiff presented to PA Boyer for medication management and reported that Vyvanse was working and that he could concentrate much better and complete tasks.[161] PA Boyer noted that Plaintiff was positive for joint swelling, but all other systems were negative.[162]

  *b.* *Medical Opinions*

---

[156] AR 414-415.

[157] AR 423.

[158] *Id.*

[159] *Id.*

[160] AR 423-424.

[161] AR 430.

[162] *Id.*

In April 2022, Dr. Genthe opined that Plaintiff's ADHD was managed with medication but his psychosis and depression were not and that it was likely to interfere with his ability to initiate and maintain employment, or function adequately or consistently in a work setting.[163] Dr. Genthe assessed Plaintiff with fair ability to do the following: interact with the public, ask questions and accept instruction, get along with coworkers or peers, respond to criticism from supervisors, and adhere to basic standards of neatness and cleanliness.[164] Dr. Genthe opined that Plaintiff could understand and remember short, simple instructions and carry out short simple instructions in a reasonable amount of time; would have difficulty understanding and remembering detailed instructions and carrying out detailed instructions in a reasonable amount of time; is able to maintain concentration and attention for brief periods but not extended periods; is able to perform simple tasks at a consistent pace; would have difficulty responding appropriately to changes in a work setting; and is able to maintain a schedule and complete a 40-hour work week.[165]

In April 2022, Dr. Crisp opined that Plaintiff would have the following limitations: stand for 30 minutes at a time and for up to 2 hours a day; walk for 30 minutes at a time and for up to 2-3 hours a day; sit for 8 hours or more in a day;

---

[163] AR 329.

[164] *Id.*

[165] *Id.*

DISPOSITIVE ORDER - 30

occasionally lift up to 30 pounds and frequently lift up to 16 pounds; constantly

push and pull with his right arm, left arm and left leg but occasionally push or pull

with his right leg; occasionally climb; frequently balance, stoop and crouch; and

constantly handle, finger, feel and reach overhead.[166] Dr. Crisp opined that

Plaintiff could occasionally be exposed to heights, moving machinery, extreme

temperatures, chemicals, dust, noise, and vibration.[167]

In April 2023, PA Boyer completed a Medical Source Statement.[168] PA Boyer

stated that Plaintiff suffered both physical and mental impairments.[169] PA Boyer

wrote that Plaintiff was limited in his ability to sit and stand for extended periods

due to right knee ACL disruption and that he suffered from auditory hallucinations

that interfered with his ability to concentrate and became louder in a group

setting.[170] PA Boyer opined that Plaintiff would be limited to lifting and carrying

up to 10 pounds.[171] PA Boyer wrote that Plaintiff's schizoaffective disorder

impacted his ability to access services and that Plaintiff hears voices that become

loud in a group setting and make in very difficult to concentrate or complete

---

[166] AR 336-337.

[167] AR 337-338.

[168] AR 548-550

[169] AR 548.

[170] *Id*.

[171] AR 549.

1    tasks.[172] PA Boyer noted that Plaintiff was waiting for an orthopedic consult and

2    would likely require surgical repair and extended recovery because it was a second

3    injury to the joint.[173]

4            In May 2023, Dr. Genthe opined that Plaintiff would have a marked

5    limitation in the following activities: understand, remember, and persist in tasks

6    by following detailed instructions; adapt to changes in a routine work setting;

7    communicate and perform effectively in a work setting; maintain appropriate

8    behavior in a work setting; complete a normal workday or workweek without

9    interruption from symptoms; and set realistic goals or plan independently.[174]

10   Dr. Genthe also opined that Plaintiff would have a moderate limitation in the

11   following activities: perform activities withing a schedule, maintain attendance and

12   be punctual without special supervision; learn new tasks; perform routine tasks

13   without special supervision; and be aware of normal hazards.[175] Dr. Genthe opined

14   that overall the severity of Plaintiff's limitations was marked.[176] Dr. Genthe opined

15   that Plaintiff suffered from problematic personality traits that impaired his ability

---

[172] *Id.*

[173] *Id.*

[174] AR 556.

[175] *Id.*

[176] *Id.*

to function and needed to be formally assessed.[177] Dr. Genthe opined that Plaintiff's current medications were not adequately controlling symptoms which were likely to interfere with his ability to maintain employment.[178]

In July 2023 PA Boyer completed a second Medical Source Statement.[179] She stated that Plaintiff suffered from depression, heartburn, ADHD, anxiety with panic attacks, insomnia, PTSD, a tear of the anterior cruciate ligament, and schizoaffective disorder.[180] PA Boyer stated that Plaintiff's symptoms were pain in the right knee of 8/10 when active and 7/10 at rest, with numbness in the second, third and fourth toes of the right foot.[181] Relevant clinical findings were limp on the right when walking, shifting when seated due to pressure, and an MRI taken April 14, 2023, which showed partial thickness tear of the ACL graft and full thickness fissuring of the central medial femoral condyle; and noted that when seated Plaintiff must elevate his right leg.[182] PA Boyer noted that Plaintiff had surgical repair of his ACL in October 2021 and reinjured the knee as confirmed by MRI taken February 2023, and was currently taking hydrocodone pending an orthopedic

---

[177] AR 557.

[178] *Id.*

[179] AR 561-563.

[180] AR 561.

[181] *Id.*

[182] *Id.*

appointment scheduled for July 28, 2023.[183] PA Boyer stated that Plaintiff's physical mental conditions were likely to cause pain as he was suffering from a torn ACL graft and his mental conditions caused him to pace when under stress.[184] PA Boyer noted that following surgery Plaintiff's pain might be more severe when recovering and he might have chronic pain after surgery.[185] She noted that Plaintiff suffers paranoid thoughts when anxious, that medication decreases but does not eliminate Plaintiff's anxiety, and that pain increases Plaintiff's anxiety.[186] PA Boyer opined that Plaintiff would be limited to sedentary work.[187] PA Boyer further opined that Plaintiff would be off task for 21-30% of an average workweek.[188]

### 3.    Analysis

Plaintiff argues that the ALJ erred by improperly rejecting the medical opinions of Dr. Genthe and PA Boyer.  The Commissioner argues that the ALJ gave good reasons to discount the opinions of Dr. Genthe and argues that two of the three reasons given by the ALJ to discredit PA Boyer's opinions were good

---

[183] *Id.*

[184] *Id.*

[185] AR 462.

[186] *Id.*

[187] *Id.*

[188] AR 563.

reasons.[189]  The Court disagrees with the Commissioner.  The Court finds that the

ALJ erred in finding PA Boyer's opinions unpersuasive.  Additionally, the Court

notes that the ALJ erred in finding the contradicting opinion of consultative

examiner Dr. Crisp to be persuasive because the ALJ did not consider a worsening

in Plaintiff's condition that took place after Dr. Crisp's examination. Overall, the

ALJ failed to provide good reasons to discount PA Boyer's opinions.  Additionally,

the Court finds that the ALJ failed to consider the nature of Plaintiff's mental

illness when considering Dr. Genthe's opinions.

a.    _The ALJ's consideration of PA Boyer's opinions_

The ALJ considered PA Boyer's April 2023 opinions and July 2023 opinions

separately but he gave the same three reasons for finding the opinions

unpersuasive.[190] The ALJ articulated:

> Ms. Boyer notes the claimant has ACL disruption and therefore
> limited ability to sit/stand, and presumably cites this in support of her
> opinion. However, the opinion is not consistent with the evidence. The
> treatment notes indicate the claimant complained of right knee
> pain/discomfort and he has a history of ACL reconstruction, but he
> does not use an assistive device (Exhibits 7F; 8F). Despite his knee
> complaints, he continued to be functional in and around the home. He
> was able to care for his child, go shopping, fix meals, do housework,
> and he remained independent for self-care (Exhibit 8F/75). Moreover,
> at the hearing, the claimant testified that his surgeon was not sure

[189] The Commissioner did not address Plaintiff's assertion that he did not testify that
his orthopedist said he did not need surgery because he had only a partial tear, which
the Court interprets as a waiver of that issue.

[190] AR 32.

why he had pain and that further surgery was not recommended because he did not have a full tear.[191]

As the Court has noted, Plaintiff asserted in his brief that he did not testify that his surgeon said he did not understand his pain, that surgery was not recommended, or that he did not have a full thickness tear.  The Commissioner's responsive brief  did not address the issue, which the Court interprets as acknowledgment on the Commissioner's part of the ALJ's error in attributing such statements to Plaintiff.  Additionally, the Court thoroughly reviewed the hearing transcript and cannot find any such statement.  The pertinent portion of the transcript states as follows:

PL: . . . That's the reason why I yell at them after surgery is because my mother and her had to take care of my son.

ALJ: I see that you re-tore it, you had another surgery on it?

PL: No, I talked to - -

ALJ: Orthopedic doctor?

PL: Yes, thank you.  You have to understand why I'm in pain.

ALJ: Okay, let's get [the vocational expert] on the phone please.

HR: Okay.[192]

---

[191] *Id*.

[192] AR 54.

DISPOSITIVE ORDER - 36

1    It is possible that a portion of the hearing record is missing from the

2    transcript but following a reading of the transcript provided by the Commissioner

3    and record as a whole, the Court concludes that is unlikely. The record simply does

4    not support the ALJ's finding.  At no point in the transcript did Plaintiff testify

5    that the orthopedist advised against surgery, or that there was no explanation for

6    his pain, or that he did not have a full thickness tear.[193] It appears from the

7    pertinent portion of the transcript that Plaintiff wanted to explain the source of his

8    pain.  Moreover, the objective evidence in the record in the form of an MRI

9    documenting a full-thickness ACL tear refutes the ALJ's finding that Plaintiff had

10   only a partial tear or that his pain was unexplained.[194] Even if the tear was only a

11   partial tear, the ALJ fails to adequately explain why a partial tear would not be

12   painful.

13       The Court then must consider the reasonableness of the ALJ's second

14   articulated reasoning that PA Boyer's opinions should be given little

15   persuasiveness because Plaintiff had not been prescribed a cane.  As with the first

16   reason given, the Court finds this reasoning to be clearly erroneous.

17       It is notable that when considering Listing 1.18, the ALJ articulated:

18       The undersigned considered Listing 1.18. The claimant does not meet
19       the requirements of the listing. The evidence does not show that the
         claimant cannot perform fine and gross movements with at least one
20       upper extremity due to a combination of extremity-related limitations

21   _____

     [193] *Id.*

22

     [194] AR 412.

23

and the use of a medically necessary mobility device. The evidence indicates the claimant has normal dexterity (Exhibit 7F/2). The claimant has a history of right knee surgery, but the evidence does not indicate that he uses an assistive device (Exhibit 8F).[195]

Had Plaintiff met the criteria discussed by the ALJ he would not have simply been found limited to sedentary work but would have been found incapable of any substantial gainful activity.  There is a wholly different burden to show that a Plaintiff has met a listing than there is to show that he is limited to sedentary work.  The ALJ did not cite to, nor is the Court aware of, any regulation or even sub-regulation by which a Plaintiff must prove that he has been prescribed a cane in order to prove he is limited to the sedentary exertional level.  It appears that the ALJ imposed a greater burden of proof than that which is required by requiring Plaintiff to show that a cane was prescribed. Accordingly, the Court cannot find that this reason constitutes a "good reason" to discredit PA Boyer's opinion.

As to the third and final reason provided by the ALJ, that Plaintiff was able to manage his household, the Court finds the record does not support the ALJ's finding. While the record indicates that Plaintiff's knee injury initially improved following his surgery, the record indicates that as of April 2023, he had a significant re-injury of his right knee and that Plaintiff reported a need to limit his walking to short periods, then followed by rest.[196] Following the re-injury Plaintiff

---

[195] AR 21.

[196] AR 408.

consistently presented with tenderness of the LCL and ACL.[197] Plaintiff reported

that he could sit no longer than 10-15 minutes and could stand or walk no longer

than 5-10 minutes unless he was leaning on something such as a shopping cart.[198]

The Court notes that in finding the opinions of Dr. Crisp to be persuasive the

ALJ did not consider the application of the opined limits to separate periods prior

to and after Plaintiff's re-injury.  This was also error, as objective MRI imaging

documented a substantial change in Plaintiff's condition after April 2023.

Moreover, PA Boyer stated that Plaintiff might be left with chronic pain post-

surgery because this was a second injury.[199]

The reasons that the ALJ articulated as to both the supportability and

consistency factors were flawed and cannot be considered to constitute "good

reasons" to discount PA Boyer's medical opinions.  The Court concludes that

remand is warranted for the ALJ to properly consider the medical opinion evidence

regarding Plaintiff's physical impairments both as to the period prior to and

subsequent to Plaintiff's re-injury of his right knee.

      b.    *The ALJ's consideration of Dr. Genthe's opinions*

Because the Court has already remanded the case for consideration of the

medical opinion evidence the Court will only briefly address this issue.  Plaintiff

---

[197] AR 408-409, 411-412, 553.

[198] AR 411.

[199] AR 562.

argues that the ALJ erred in considering Dr. Genthe's opinions and erroneously found that the opinions Dr. Genthe rendered in 2022 were inconsistent with those he rendered in 2023.  Initially, the Court notes that it is not uncommon for medical opinions to differ as to limitations imposed because frequently examiners have a longer record of treatment to rely upon when rendering a second opinion, and also medical conditions can often change over time.  Dr. Genthe's 2022 opinions are not identical to those of his 2023 opinions but are partially consistent and the ALJ should have considered the changes in Plaintiff's medications and the longitudinal record in general when considering their inconsistences.  The Court concludes that this is a moot issue, however, because the Court has remanded the case for reconsideration of the medical opinions. The Court suggests that on remand, when considering the record as a whole, the ALJ should consider the waxing and waning nature of Plaintiff's mental conditions when evaluating Dr. Genthe's opinions.

### 4.    Summary

Because the ALJ failed to properly consider the medical opinion evidence and failed to acknowledge that two separate periods existed prior to and subsequent to a worsening in Plaintiff's physical condition a remand for further proceedings is warranted.

## B.    Step Three: Plaintiff fails to establish consequential error.

As the Commissioner has asserted in his brief, it is Plaintiff's burden to establish that he has met at Listing with specificity.  Here, Plaintiff failed to specify the records which establish that he has met a listing and instead relied on a

blanket assertion that his symptoms increase when he leaves his home.[200]  This is not enough to establish that Plaintiff has met a listing.

**C.    Plaintiff's Subjective Complaints: The Court finds the issue moot.**

Plaintiff argues the ALJ failed to properly his testimony. As discussed above, the ALJ failed to properly consider the medical opinion evidence.  Because the Court has remanded the case for consideration of the record as a whole, the Court finds this issue is moot.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[201] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[202]

---

[200] ECF No. 9.

[201] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[202] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

The Court finds that further development is necessary for a proper disability determination. Here, additional medical expert testimony is necessary to resolve the issue of substance use. Therefore, the ALJ should obtain medical expert testimony, consider the medical opinions as to both the factors of consistency and supportability and make findings at each of the five steps of the sequential evaluation process. The Court further directs that on remand the case be assigned to a different ALJ.

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.      The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). This matter is to be assigned to a different ALJ.

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10,** enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 9th day of October, 2024.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge